# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| JANET MOSLEY, the surviving spouse of Andre Mosley, NEVADA MOSLEY, BREANNA MOSLEY, ANDRE MOSLEY, and CHRISTOPHER MOSELY, the surviving children of Andre Mosley, Deceased, )))))))) | **JURY TRIAL DEMANDED** |
| Plaintiffs, ) | Case No. |
| v. )) | |
| STATE OF MISSOURI, CORIZON, INC., IAN WALLACE, TRAVIS WILHITE, DONNA SPAVEN and Does 1-20. )))) | |
| Defendants. ) | |

## COMPLAINT

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983, and the Eighth Amendment to the United States Constitution, as made applicable to the States through the Fourteenth Amendment against Warden Ian Wallace, Correctional Officer Travis Wilhite, Donna Spaven presently unknown correctional officers and staff of Southeast Correctional Center, in their individual capacities, the Southeast Correctional Center, Corizon, Inc. and against the State of Missouri. This action also asserts state law negligence claims for negligent hiring and supervision. This action also asserts a state law wrongful death claim against the Defendants.

2. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1367.

3. Venue is proper pursuant to 28 U.S.C. Section 1391(b)(2).

4. It is alleged that the individual named defendants deliberate indifference to serious medical needs and actions resulted in the unnecessary and wanton infliction of pain of the decedent, Andre Mosley, thereby violating his rights under the Eighth Amendment to the United States Constitution,

1

as made applicable to the States by the Fourteenth Amendment, which grants Plaintiff freedom from cruel and unusual punishment. It is further alleged that this violation was committed as a result of the policies and customs of the State of Missouri and the Southeast Correctional Center.

5. It is alleged that the Defendants negligently caused the wrongful death of Andre Mosley by failing protect him knowing he suffered from medical injuries that made him more susceptible to harm. Plaintiffs maintain their action for wrongful death pursuant to R.S.Mo. §537.080(1).

## PARTIES

6. Decedent Andre Mosley was a 54 year-old African-American male incarcerated in Southeast Correctional Center ("SECC") in Mississippi County, Missouri at the time of his death.

7. Plaintiff Janet Mosley is Andre Mosley's widow and a resident of St. Louis County, Missouri.

8. Plaintiff Nevada Mosley is the daughter of the decedent, Andre Mosley, and a resident of St. Louis County, Missouri.

9. Plaintiff Breanna Mosley is the daughter of the decedent, Andre Mosley, and a resident of St. Louis County, Missouri.

10. Plaintiff Andre Mosley is the son of the decedent, Andre Mosley, and a resident of Leavenworth County, Kansas.

11. Plaintiff Christopher Mosley is the son of the decedent, Andre Mosley, and a resident of Williamson County, Illinois.

12. Defendant Ian Wallace is the director of the Southeast Correctional Center, which is operated by the State of Missouri's Department of Corrections. Defendant Wallace is responsible for the operation of Southeast Correctional Center and for the welfare of all the inmates of that prison.

13. Defendant Corizon, Inc. ("Corizon") is a private contractor that provides the Southeast Correctional Center with health care services.

14. Dawn Spaven is a nurse and employee of Corizon.

15. Defendant Travis Wilhite and Does 1-20 are Correctional Officers of SECC who, at all times mentioned in this complaint, held rank of prison guard and were assigned to Southeast Correctional Center.

16. Each defendant is sued individually and in his/her official capacity. At all times mentioned in this complaint, each Defendant was acting under the color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Missouri.

17. Upon information and belief, all individual Defendants reside within this judicial district.

18. Defendant State of Missouri is located in this judicial district.

## **FACTS**

19. Andre Mosley was incarcerated at the Southeast Correctional Center located in Mississippi County, Missouri.

20. Andre Mosley was 54 years of age at the time of the incident described herein.

21. Mr. Mosley was a known insulin dependent diabetic, who suffered from chronic back pain, a heart bypass, Coronary Artery Disease and Dyslipidemia.

22. On October 25, 2013, Mr. Mosley was housed in the Southeast Correctional Center Infirmary, after inflicting an injury to his wrist using a small piece of metal that he removed from a wheelchair.

23. Due to his actions of self-harm, Mr. Mosley was placed under suicide watch and moved to a padded cell. Upon Mr. Mosley's second attempt to self-inflict an injury, Warden Ian Wallace directed guards to place Mr. Mosley in a restraint chair in his padded cell.

24. At approximately 2:44 p.m. Mr. Mosley's was handcuffed and shackled in the restraint chair.

25. SECC departmental policies require "upon placing the offender in the restraint chair, medical staff will immediately be called to evaluate the offender's condition and review the offender's medical records."[1]

26. LPN Donna Spaven, an employee of Correctional Medical Services, conducted an assessment on Mr. Mosley after he was placed in the restraint chair. LPN Spaven assessment consisted of checking that Mr. Mosley was alive and that his restraints were in the proper place.

27. LPN Spaven failed to review Mr. Mosley's medical records after her initial assessment.

28. In addition to the initial medical assessment of the inmate, SECC policies state that "the shift supervisor will observe the offender every hour and determine whether to continue or discontinue restraint chair use and will make a notation on the chronological log." [2]

29. At approximately 3:45 p.m. Correctional Officer (CO) Paul Luber went into Mr. Mosley's cell to perform the first required check. CO Luber was not the shift supervisor.

30. SECC departmental policies require that an "offender will be released from the restraint chair at the earliest possible time. If the offender demonstrates a willingness to comply with orders and has his behavior under control, the offender will be removed from the restraint chair after consultation with the chief administrative officer/designees."[3]

31. CO Luber recalled in his witness report that there were no issues when he would check upon Mr. Mosley. Mr. Mosley told CO Luber that he was "done" and "would do anything" to get out of the chair.

32. Throughout Mr. Mosley's duration in the restraint chair, CO Wilhite was the acting shift supervisor.

---

[1] SOP 20-2.3 III-I-9
[2] SOP 20-2.3 III-I-16
[3] SOP 20-2.3 III-I-17

4

33. Despite Mr. Mosley's docile behavior and complacency, CO Wilhite contacted the on-call duty officer, Brandi Merideth, twice in order to have Mr. Mosley's time in the chair extended.

34. CO Wilhite did not explain or describe Mr. Mosley's behavior, nor did Ms. Merideth inquire.

35. Mr. Mosley complained to staff on numerous occasions that he was in pain and that the hand upon which restraints were placed were agitating the wounds on his wrists. Mr. Mosley also complained that the restraints were so tight his hands were numb.

36. Around the second hour of Mr. Mosley's duration in the restraint chair, the medical staff determined Mr. Mosley's restraints were too tight it and decided to loosen them.

37. During Mr. Mosley's extended period in the restraint chair, he informed LPN Martin that he was having chest pains. Martin, an employee of Corizon, documented the chest pains but did not administer an EKG test because she/he did not consider the area of complaint to warrant any further testing.

38. At approximately 4:45 p.m. Ms. Amanda Gibson, an employee of Corizon, completed a restraint chair check on Mr. Mosley.

39. Mr. Mosley anxiously explained to Gibson that he had not taken his medication or insulin in "a couple days."

40. LPN Gibson checked Mr. Mosley's blood sugar, which read high. Gibson called the on-call doctor, Dr. Arthur Keiper, and informed him that Mr. Mosley was in a restraint chair and had not been eating.

41. Dr. Keiper was part of a rotation of on-call doctors that assisted the Missouri correctional facilities. Dr. Keiper was not aware of Mr. Mosley's medical history until after his death.

42. Dr. Keiper advised Gibson to hold Mr. Mosley's regular insulin medication, which was long lasting, and give Mosley a faster working insulin.

5

43. Dr. Keiper was not aware of Mr. Mosley's medical history until after his death.

44. In Dr. Keiper's interview with investigators, he stated he had not read the Missouri Department of Corrections policies, but assumed a doctor must have authorized Mr. Mosely to be placed in the restraint chair.

45. Dr. Keiper stated after learning about Mr. Mosely's death and medical history, he would have been reluctant to authorize him to be placed in the chair.

46. After administering Mr. Mosely's first insulin shot, LPN Gibson explained to CO Wilhite that Mr. Mosley had extensive medical issues, had not taken his medication for several days and, in her opinion, did not need to be in the restrictive chair.

47. CO Wilhite informed LPN Gibson that Mr. Mosley was going to remain in the restraint chair for six hours, an amount of time neither required nor advised.

48. Throughout Mr. Mosley's time in the restraint chair, LPN Gibson conducted approximately five (5) checks on Mr. Mosley's blood sugar level and informed CO Wilhite that his readings were high.

49. During LPN Gibson's checks, Mr. Mosley "begged and pleaded" for help and to "not let anything happen to him." He also informed her that he needed to get out of the chair and that something was wrong with him.

50. Gibson administered another sugar level check at approximately 8:10 p.m. Mr. Mosley's blood sugar level again registered as high, which prompted her to call the on-call doctor again. The doctor ordered another small amount of insulin, which Gibson administered.

51. CO Wilhite contacted Warden Wallace to discuss the removal of Mr. Mosley from the restraint chair. Warden Wallace agreed to the release of Mr. Mosley but ordered that if Mr. Mosley acted out, he would be placed back in the chair.

6

52. At approximately 8:44 p.m., after six hours of being positioned in the restraint chair, Mr. Mosley was authorized to be released.

53. CO's Wilhite and Luber went into Mr. Mosley's cell to release him from the restraint chair. Mr. Mosley began screaming and was in obvious physical distress.

54. CO's Tyler, May and Vincent were sent into the cell to remove Mr. Mosley from the restraint chair. As the officers began removing Mr. Mosley's restraints he slumped over and began clenching his fists. The officers laid Mr. Mosley onto the floor where he began to vomit a "black substance."

55. Mr. Mosley remained handcuffed.

56. CO Tyler moved Mr. Mosley onto his back where his handcuffs were removed from his backside only to be restrained from the front.

57. After restraining Mr. Mosley's hands in the front, CO Tyler discovered that Mr. Mosley did not have a pulse.

58. The medical staff and correctional officers performed CPR while outside medical personnel was called.

59. Mr. Mosley was taken by ambulance to Missouri Delta Medical Center in Sikeston, MO.

60. Mr. Mosley was pronounced dead at 9:30 p.m.

61. The medical examiner's report concluded that Mr. Mosley's cause of death was "Hypertensive and Arteriosclerotic Heart Disease Exacerbated by Prolonged Restraint."

62. Throughout Mr. Mosley's time in the restraint chair, he was cooperative and compliant and posed no significant threat of death or seriously physical injury to any Defendant or to himself. The Defendants restrained Mr. Mosley much longer than necessary without justification, intentionally and wrongfully, which directly and proximately caused Mr. Mosley's death.

63. At no point did any of the events which preceded Mr. Mosley's placement in the restraint chair justify the actions taken by Defendants.

64. The Defendants' deliberate indifference to Andre Mosley's medical history and use of the restraint chair in effectuating punishment of his person was objectively unreasonable and/or contractors.

65. At all times herein mentioned, Defendants were acting under the color of the statutes, ordinances, regulations, customs, and usages of the State of Missouri and under authority of their respective offices as state employees.

## COUNT I
(42 U.S.C. §1983 v. State of Missouri and Corizon)

66. Paragraphs 1 through 65 are incorporated herein by reference as though fully set forth.

67. The State of Missouri and Corizon are responsible for the training of all staff in the proper use associated with the restraint chair procedures and in the performance of their duties as staff members at the Southeast Correctional Center.  The State of Missouri and Corizon trained the individual Defendants in the Southeast Correctional Center's practices of the use of restraint chair in accordance with the statutes, ordinances, regulations, customs, and usages of the State of Missouri.

68. The conduct of the State of Missouri as described above deprived Mr. Mosley of his right to be secure in his person against cruel and unusual punishment as guaranteed to Mr. Mosley under the Eighth Amendment to the United States Constitution and Mosley's right not to be deprived of life, liberty, or property without due process of law and to be accorded the equal protection of the law as guaranteed to Mosley under the Fourteenth Amendment to the United States Constitution.

69. Andre Mosley faced a substantial risk of serious harm when placed in the restraint chair in light of his existing medical conditions and the State of Missouri and Corizon were deliberately

8

indifferent to the risks posed by keeping Mr. Mosley strapped in the restraint chair for six hours and the failure to remove him from the chair caused Mr. Mosley harm.

70. As a direct and proximate result of the unlawful conduct of the State of Missouri, Andre Mosley was caused to suffer severe pain, mental anguish, and an agonizing death. Additionally, the actions of the individual Defendants caused or contributed to cause medical expenses and funeral expenses of Mr. Mosley. As a result of Mr. Mosley's death, the Plaintiffs have been deprived of the decedent's companionship, comfort, instruction, guidance, counsel, training, support, love, affection and income.

WHEREFORE, the Plaintiffs pray for judgment for general, special, and punitive damages, in an amount to be proven at trial, for costs and expenses, their reasonable attorneys' fees, and for such other relief as the Court may deem just and equitable.

## COUNT II
(42 U.S.C. § 1983 v. Individual Defendants)

71. Paragraphs 1 – 65 are incorporated herein by reference as though fully set forth.

72. The conduct of Defendants Ian Wallace, Travis Wilhite, Donna Spaven and SECC personnel as described above deprived Mosley of Mosley's right to be secure in his person against cruel and unusual punishment as guaranteed to Mosley under the Eighth Amendment to the United States Constitution and Mosley's right not to be deprived of life, liberty, or property without due process of law and to be accorded the equal protection of the law as guaranteed to Mosley under the Fourteenth Amendment to the United States Constitution.

73. Andre Mosley faced a substantial risk of serious harm when the individual Defendants had sufficient knowledge of his medical conditions and were deliberately indifferent to the risks posed by keeping Mr. Mosley strapped in the restraint chair for a period of six hours and the failure to adequately monitor and/or remove him from the chair caused Mr. Mosley harm.

9

74. As a direct and proximate result of the unlawful conduct of the individual Defendants, Andre Mosley was caused to suffer severe pain, mental anguish, and an agonizing death. Additionally, the actions of the individual Defendants caused or contributed to cause medical expenses and funeral expenses to Mr. Mosley.  As a result of Andre Mosley's death, Plaintiffs have been deprived of the decedent's companionship, comfort, instruction, guidance, counsel, training, support, love, affection and income.

WHEREFORE, the Plaintiffs pray for judgment for general, special, and punitive damages, in an amount to be proven at trial, for costs and expenses, their reasonable attorney's fees, and for such other relief as the Court may deem just and equitable.

## COUNT III
(R.S.Mo. §537.080(1) Wrongful Death v. All Defendants)

75. Paragraphs 1 – 65 are incorporated herein by reference as though fully set forth.

76. Plaintiffs maintain this action for wrongful death pursuant to R.S.Mo. §537.080(1).

77. As more fully set forth above, Defendants intentionally delayed and interfered with Mr. Mosley's medical treatment and well-being by confining him to the restrictive chair for six hours.

78. Defendants confined Mr. Mosley in the restraint chair in a harmful and offensive manner on Mr. Mosley without justification, intentionally and wrongfully causing the death of Mosley.

79. As a direct and proximate result of the unlawful conduct of Defendants described above, Andre Mosley was caused to suffer severe pain, mental anguish, and an agonizing death. Additionally, the actions of Defendants caused or contributed to cause medical expenses and funeral expenses.  As a result of Andre Mosley's death, Plaintiffs have been deprived of the decedent's companionship, comfort, instruction, guidance, counsel, training, support, love, affection and income.

80.  Plaintiffs are entitled to recover for all damages, including pain and suffering experienced by decedent, for which decedent would be entitled to claim had death not ensued.

WHEREFORE, the Plaintiffs pray for judgment against the Defendants jointly and severally in an amount to be determined at trial together with such other and further relief as the Court deems just and proper under the circumstances.

### COUNT IV
(Negligent Hiring v. State of Missouri and Corizon)

81. Paragraphs 1 – 65 are incorporated herein by reference as though fully set forth.

82. At all times material hereto, Defendants Wallace, Wilhite, Spaven and Does 1-20 were hired as employees of the State of Missouri and/or Corizon.

83. At the time of the occurrence, Defendants were acting within the course and scope of their agency and/or employment by the State of Missouri and/or Corizon.

84. The State of Missouri and Corizon were negligent in their hiring of the Individual Defendants in the following respects:

    a. The State of Missouri and Corizon failed to properly and accurately perform psychological and mental health testing of Defendants prior to employment;

    b. The State of Missouri and Corizon failed to conduct a proper physical evaluation to determine whether Defendants were fit for a position as correctional officers.

85. As a direct and proximate result of the negligent conduct of the State of Missouri and Corizon described above, Andre Mosley was caused to suffer severe pain, mental anguish, and an agonizing death. Additionally, the actions of the individual Defendants caused or contributed to cause medical expenses, lost wages, and funeral expenses.  As a result of Andre Mosley's death, Plaintiffs have been deprived of the decedent's valuable companionship, comfort, instruction, guidance, counsel, training, support, love, affection and income.

WHEREFORE, the Plaintiffs pray for judgment against the State of Missouri and Corizon in an amount to be proven at trial together with such other and further relief as the Court deems just and proper under the circumstances.

**COUNT V**
(Negligent Supervision v. State of Missouri and Corizon)

86. Paragraphs 1 – 65 are incorporated herein by reference as though fully set forth.

87. At all times material hereto, Individual Defendants were employees of the State of Missouri and/or Corizon.

88. At the time of the occurrence, the individual Defendants were acting within the course and scope of their agency and/or employment by the State of Missouri and/or Corizon.

89. The State of Missouri and Corizon were negligent in their supervision of Individual Defendants in the following respects:

    a. The State of Missouri and Corizon failed to properly train the individual Defendants in evaluating medical conditions, reviewing medical records and observing the well-being and health of individuals;

    b. The State of Missouri and Corizon failed to enforce proper enforcement measures and procedures; and

    c. The State of Missouri and Corizon failed to properly train the individual Defendants in departmental policies regarding the continuation and discontinuation of restraint chair use.

90. As a direct and proximate result of the negligent conduct of the State of Missouri and Corizon described above, Andre Mosley was caused to suffer severe pain, mental anguish, and an agonizing death. Additionally, the actions of the individual Defendants caused or contributed to cause medical

expenses, lost wages, and funeral expenses for Mr. Mosley. As a result of Andre Mosley's death, Plaintiffs have been deprived of the decedent's valuable companionship, comfort, instruction, guidance, counsel, training, support, love, affection and income.

WHEREFORE, the Plaintiffs pray for judgment against the State of Missouri and Corizon in an amount to be proven at trial together with such other and further relief as the Court deems just and proper under the circumstances.

                        KODNER WATKINS KLOECKER, L.C.


              By: ___/s/ Albert S. Watkins_____
                ALBERT S. WATKINS, LC #34553MO
                MICHAEL D. SCHWADE, #60862 MO
                TAYLOR A. OLSON, #66649MO
                Attorneys for Plaintiffs
                7800 Forsyth Blvd., 7th Floor
                St. Louis, Missouri 63105-3758
                (314) 727-9111
                (314) 727-9110 Facsimile